AF Approval [signature]                    Chief Approval [signature]

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v.                                         CASE NO. 5:22-cr-5-JA-PRL

GEORGE UTLEY

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Roger B. Handberg, United States Attorney for the Middle District of Florida,

and the defendant, George Utley, and the attorney for the defendant, Summer

Goldman, Esquire, mutually agree as follows:

**A.    Particularized Terms**

1.    Count Pleading To

The defendant shall enter a plea of guilty to Count One of the

information.  Count One charges the defendant with receipt of stolen

government property (FECA disability benefits), in violation of 18 U.S.C.

§ 641.

2.    Maximum Penalties

Count One carries a maximum sentence of not more than 10

years' imprisonment; a fine of not more than $250,000, or twice the gross gain

caused by the offense, or twice the gross loss caused by the offense, whichever

Defendant's Initials _G.U._

is greater; a term of supervised release of not more than 3 years; and a special assessment of $100. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

     3.    Elements of the Offense

     The defendant acknowledges understanding the nature and elements of the offense with which the defendant has been charged and to which the defendant is pleading guilty. The elements of Count One are:

| | |
|---|---|
| First: | The defendant knowingly received, concealed, or retained money or property of value; |
| Second: | The money or property belonged to the United States; |
| Third: | The defendant knew that the money or property had been embezzled, stolen, or converted from the United States; |
| Fourth: | The defendant intended to convert the money or property to his or her own use or gain; and, |
| Fifth: | The aggregate value of the money or property exceeded $1,000. |

Defendant's Initials       2

4.      Indictment Waiver

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

5.      No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.  These other felony charges include, but are not limited to: theft of government funds (Social Security benefit payments), in violation of 18 U.S.C. § 641; mail fraud, in violation of 18 U.S.C. § 1341; wire fraud, in violation of 18 U.S.C. § 1343; and making a false statement/fraud in order to obtain Federal Employees' Compensation Act benefits, in violation of 18 U.S.C. § 1920.

6.      Waiver of Statute of Limitations Defense

The defendant stipulates and agrees that the offense charged in Count One— receipt of stolen government property (FECA disability benefits), in violation of 18 U.S.C. § 641—is a continuing offense, and that the conduct described in the Factual Basis of this plea agreement is not subject to a subject of limitations defense under 18 U.S.C. § 3282(a).  Even if the Court

Defendant's Initials _C.C._                    3

determines that the crime charged in Count One is not a continuing offense,

however, the defendant stipulates and agrees to waive any such statute of

limitations defense to said conduct.

7.      Mandatory Restitution to Victim of Offense of Conviction

        Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to

make full restitution to the United States Department of Labor, Office of

Workers' Compensation Programs (DOL-OWCP).

8.      Guidelines Sentence

        Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will

recommend to the Court that the defendant be sentenced within the

defendant's applicable guidelines range as determined by the Court pursuant

to the United States Sentencing Guidelines, as adjusted by any departure the

United States has agreed to recommend in this plea agreement.  The parties

understand that such a recommendation is not binding on the Court and that,

if it is not accepted by this Court, neither the United States nor the defendant

will be allowed to withdraw from the plea agreement, and the defendant will

not be allowed to withdraw from the plea of guilty.

9.      Acceptance of Responsibility - Three Levels

        At the time of sentencing, and in the event that no adverse

information is received suggesting such a recommendation to be unwarranted,

Defendant's Initials _G.V._            4

the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

10.   Low End

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted,

Defendant's Initials _6.U._          5

the United States will not oppose the defendant's request to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

61.   Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the $740,542.38 in proceeds the defendant admits he obtained, as the result of the commission of the offense(s) to which the defendant is pleading guilty. The defendant acknowledges and agrees that: (1) the defendant obtained this amount as a result of the commission of the offense(s), and (2) as a result of the acts and omissions of the defendant, the proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of

[handwritten: $732,459.46]

proceeds the defendant obtained, as the result of the offense(s) of conviction. The defendant further consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offense(s) and consents to the entry of the forfeiture order into the Treasury Offset Program. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant also agrees to waive all constitutional, statutory, and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging

Defendant's Initials _C. C._                7

instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets. The defendant further agrees to be

Defendant's Initials *G.V.*            8

polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing. In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding

Defendant's Initials _G. U._                9

the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

**B.    <u>Standard Terms and Conditions</u>**

    1.    <u>Restitution, Special Assessment and Fine</u>

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the

Defendant's Initials  *C. U.*                    10

Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.  The special assessment is due on the date of sentencing.  The defendant understands that this agreement imposes no limitation as to fine.

2.      Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.      Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.      Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the

Defendant's Initials *C.V.*          11

background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

     5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that her financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the

Defendant's Initials *C.U.*       12

previous five years.  The defendant similarly agrees and authorizes the United

States Attorney's Office to provide to, and obtain from, the United States

Probation Office, the financial affidavit, any of the defendant's federal, state,

and local tax returns, bank records and any other financial information

concerning the defendant, for the purpose of making any recommendations to

the Court and for collecting any assessments, fines, restitution, or forfeiture

ordered by the Court.  The defendant expressly authorizes the United States

Attorney's Office to obtain current credit reports in order to evaluate the

defendant's ability to satisfy any financial obligation imposed by the Court.

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to

nor bound by this agreement.  The Court may accept or reject the agreement,

or defer a decision until it has had an opportunity to consider the presentence

report prepared by the United States Probation Office.  The defendant

understands and acknowledges that, although the parties are permitted to

make recommendations and present arguments to the Court, the sentence will

be determined solely by the Court, with the assistance of the United States

Probation Office.  Defendant further understands and acknowledges that any

discussions between defendant or defendant's attorney and the attorney or

other agents for the government regarding any recommendations by the

Defendant's Initials _G. U._          13

government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

        The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

Defendant's Initials _C. U_                14

8.      Middle District of Florida Agreement

It is further understood that this agreement is limited to the

Office of the United States Attorney for the Middle District of Florida and

cannot bind other federal, state, or local prosecuting authorities, although this

office will bring defendant's cooperation, if any, to the attention of other

prosecuting officers or others, if requested.

9.      Filing of Agreement

This agreement shall be presented to the Court, in open court or

in camera, in whole or in part, upon a showing of good cause, and filed in this

cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.     Voluntariness

The defendant acknowledges that defendant is entering into this

agreement and is pleading guilty freely and voluntarily without reliance upon

any discussions between the attorney for the government and the defendant

and defendant's attorney and without promise of benefit of any kind (other

than the concessions contained herein), and without threats, force,

intimidation, or coercion of any kind.  The defendant further acknowledges

defendant's understanding of the nature of the offense or offenses to which

defendant is pleading guilty and the elements thereof, including the penalties

provided by law, and defendant's complete satisfaction with the representation

Defendant's Initials _G. U._               15

and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement.  The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set

Defendant's Initials _*G.C.*_            16

forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.   Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.   Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _27_ day of ___January___, 2022.

ROGER B. HANDBERG
United States Attorney

George Utley
Defendant

Robert E. Bodnar, Jr.
Assistant United States Attorney
Chief, Ocala Division

Summer Goldman, Esquire
Attorney for Defendant

FOR Jay Trezevant ILIANYS RIVERA MIRANDA
Assistant United States Attorney
Chief, Criminal Division – NORTH

Defendant's Initials _G.U._          17

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO. 5:22-cr- **5-JA-PRL**

GEORGE UTLEY

PERSONALIZATION OF ELEMENTS

Do you agree that beginning on or about January 27, 2009, and continuing through on or about March 17, 2019, in the Middle District of Florida, and elsewhere, you knowingly received, concealed, or retained money or property of value, specifically, Federal Employees' Compensation Act (FECA) disability benefit payments?

Do you agree that the money or property belonged to the United States, specifically, the United States Department of Labor?

Do you agree that you knew that the money or property had been stolen or converted from the United States?

Do you agree that you intended to convert the money or property to your own use or gain?

Defendant's Initials               18

Do you agree that the aggregate value of the money or property exceeded $1,000?

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v.                                        CASE NO. 5:22-cr-5-JA-PRL

GEORGE UTLEY

## FACTUAL BASIS

### FECA Benefits Form EN-1032 and CA-1

The Federal Employees' Compensation Act (FECA) is codified in 5
U.S.C. §§ 8101 and 8193. FECA is administered by the Department of Labor,
Office of Worker's Compensation Programs (DOL-OWCP). FECA provides
compensation benefits, which include medical payments and lost wages, to
civilian employees of the United States for disability due to personal injury
sustained while in the performance of their duties.[1] FECA also provides
compensation for employment-related disease. Benefits available to injured
employees include coverage of rehabilitation, medical, surgical, and other

---

[1] The DOL-OWCP disability program is a "return to work" program. It is designed
to preserve an injured worker's income and provide for medical care/rehabilitation
with the goal of returning the injured person to the USPS workforce in some
capacity. It would not be unheard of for a mail handler, like the defendant in this
case, to return to work as a "greeter" or telephone operator at a post office at the
same salary level, provided the new position met any physical restrictions imposed
by medical professionals.

Defendant's Initials _G.U._                20

necessary expenses. FECA provides compensation to dependents if the injury or disease causes the employee's death.

Claimants make an initial application for benefits by completing and submitting a DOL-OWCP form CA-1 and supporting medical evidence. Such medical evidence must be factually correct, include findings on examination, and the physician's opinion supported by medical rationale, showing how the injury caused the claimant disability from his or her work. The CA-1 form requires, in the pertinent part:

> "Any person who knowingly makes any false statement, misrepresentation, concealment of fact, or any other act of fraud to obtain compensation as provided by the FECA or who knowingly accepts compensation for which that person is not entitled is subject to civil or administrative remedies as well as felony criminal prosecution and may under appropriate criminal provisions, be punished by fine or imprisonment or both."

The DOL-OWCP requires long-term disabled employees to periodically complete and submit an EN-1032 form, Part A. This form requires the benefit recipient to report any changes in their specified medical condition.[2] It also requires the recipient to indicate any work or earnings during the previous 15

---

[2] The first page of the form clearly states that "you **must** report to OWCP any improvement in your medical condition" (emphasis in original) because the information is used to determine continued eligibility for benefit payments.

months. With regard to any work or earnings, the EN-1032 from reads, in

pertinent part:

> Report ALL employment for which you received a
> salary, wages, income, sales, commissions,
> piecework, or payment of any kind.  Such
> employment includes service with the military
> forces of the United States, including the National
> Guard, Reserve components, or other affiliates.
>
> Report ALL self-employment or involvement in
> business enterprises.  These include but are not
> limited to: farming; sales work; operating a
> business, including a store or a restaurant; and
> providing services in exchange for money, goods, or
> other services.  The kinds of services which you
> must report include such activities as carpentry,
> mechanical work, painting, contracting, child care,
> odd jobs, etc.  Report activities such as keeping
> books and records, or managing and/or overseeing
> a business of any kind, including a family business.
> Even if your activities were part time or
> intermittent, you must report them.
>
> Report as your "rate of pay" what you were paid.
> Include the value of such things as housing, meals,
> clothing, and reimbursed expenses, if they were part
> of your employment.
>
> Report ANY work or ownership interest in any
> business enterprise, even if the business lost money
> or if profits or income were reinvested or paid to
> others. If you performed any duties in any business
> enterprise for which you were not paid, you must
> show as rate of pay what it would have cost the

Defendant's Initials *C.U.*          22

employer or organization to hire someone to perform the work or duties you did, even if your work was for yourself or a family member or relative. You need not list any ownership or passive investment in any publicly traded business.

Part E (Third Party Settlements) states in the pertinent part:

In the past 15 months, did you receive any settlement or award from a claim or suit against a third party in connection with an injury or illness for which you receive compensation? This includes any product liability or medical malpractice settlement/award you have received that relates to treatment for your accepted injury or illness.

In the certification section, where the applicant is required to sign and

date the document, the EN-1032 form states:

I know that anyone who fraudulently conceals or fails to report income or other information which would have an effect on benefits, or who makes a false statement or misrepresentation of a material fact in claiming a payment or benefit under the Federal Employees Compensation Act may be subject to criminal prosecution, from which a fine or imprisonment, or both, may result.

* * *

I understand that I must immediately report to OWCP any employment or employment activity, any change in the status of claimed dependents, any third party settlement, and any monies or income or change in monies or income from Federally assisted disability or benefit programs.

Defendant's Initials *G. U.*          23

> I certify that all the statements made in response to
> questions on this form are true, complete and
> correct to the best of my knowledge and belief.

### False Statements by Utley

The defendant, George Utley (Utley), was a mail handler employed by

the United States Postal Service (USPS). Following Utley's January 2009

allegation of a work-related back injury at a Pennsylvania USPS facility, he

became a recipient of FECA benefits as of January 27, 2009.[3] As a benefit

recipient, Utley was required to file an annual DOL-OWCP EN-1032 form for

wage loss claims in order to receive compensation. As noted above, Utley was

obligated to report on this form any employment he had undertaken or income

he had earned during the preceding 15 months. In fact, the EN-1032 forms

that Utley filed required him to acknowledge his obligation to immediately

report to DOL-OWCP any improvement in his medical condition, any change

in his employment status, or any third-party settlements.

On September 12, 2012, the DOL-OWCP sent Utley a letter warning

him that he had failed to submit a required EN-1032 on July 3, 2012. This

warning also informed him that his benefits would be suspended until the

---

[3] As further described herein, Utley initially was denied FECA benefits. He
successfully appealed that decision in 2011, however, causing benefits to
immediately be paid to him (including benefits dating back to the month of alleged
injury - January 2009).

Defendant's Initials *G.U.*                    24

DOL-OWCP received the completed form EN-1032. The pertinent part of this warning stated:

> Section 10.528 of the office's regulations requires the claimant to report earnings from any remunerative employment, whether full or part time. If timely response is not made, the right to compensation for wage loss is suspended until the report is received, at which time compensation will be restored retroactively. If an employee omits or understates earnings, compensation will be declared forfeit for the period involved. Moreover, criminal prosecution may result if deliberate falsehood is employed in providing answers.

From September 12, 2012 to July 2, 2018, Utley prepared and signed seven EN-1032 forms, including at least four specifically in the Middle District of Florida (2015-2018). On each of the forms, Utley was obligated to report any third-party settlements received, employment he had undertaken or income he had earned during the preceding 15 months. Utley received these EN-1032 forms by mail from the DOL-OWCP; he returned these forms to the DOL-OWCP in the same manner. Importantly, at no time during his receipt of long-term disability benefits did Utley report any improvement in his medical condition. He also did not report any type of employment, income, salary, settlements, or work activity. On the dates listed below, Utley

Defendant's Initials _G.U._          25

completed, signed and certified the following EN-1032 forms and submitted

them from the listed (redacted) addresses:

| | | |
|---|---|---|
| *9/12/2012* | *EN-1032* | *XXX Pine Street, 19036 - (215) XXX-8047* |
| *8/1/2013* | *EN-1032* | *XXX Pine Street, 19036 - (215) XXX-8047* |
| *7/8/2014* | *EN-1032* | *XX Bolton Lane, Willingboro NJ 08046* |
| *7/27/2015* | *EN-1032* | *XXX Marion Oaks Manor, Ocala [Marion County] FL 34473* |
| *7/25/2016* | *EN-1032* | *XXXX W Blossom Drive, Beverly Hills [Citrus County] FL 34465* |
| *7/18/2017* | *EN-1032* | *XXXX W Blossom Drive, Beverly Hills [Citrus County] FL 34465* |
| *7/2/2018* | *EN-1032* | *XXXX W Blossom Drive, Beverly Hills [Citrus County] FL 34465* |

Each of the EN-1032 forms completed by Utley included the following

questions, to which he supplied the corresponding answers:

> *Q:*   *Did you work for any employer during the past 15 months?*
>
> *A:*   *"No."*
>
> *Q:*   *Were you self-employed or involved in any business enterprise in the past 15 months?*
>
> *A:*   *"No."*
>
> *Q:*   *Rate of pay?*
>
> *A:*   *"0"*

Defendant's Initials *6.U.*          26

> Q:   *Actual Earnings?*
>
> A:   *"0"*
>
> Q:   *During the past 15 months did you perform any volunteer work for which you received any form of monetary or kind compensation?*
>
> A:   *"No."*
>
> Q:   *Did you receive any settlement or award from a claim or suit against any third party in connection with any injury or illness for which you receive compensation?*
>
> A:   *"No."*

Utley's submitted statements (listed above) were false. Furthermore, as a direct result of these false statements, Utley received at least $440,616.95 (net) in benefit payments to which he was not entitled from the DOL-OWCP. These funds comprised property stolen from the United States.

### Initiation of Utley's Claim

On January 14, 2009, George Utley filed a DOL-OWCP CA-1 form—claim for compensation benefits. In this form, Utley alleged that he had injured his lower back by standing up from a seated position in the breakroom at a postal facility.  The claim was initially accepted as for "Sprain of Back," but Utley later claimed he was disabled due a herniated disc at L5-S1. On November 19, 2010, the DOL-OWCP denied Utley's claim for compensation benefits, finding the medical evidence submitted failed to establish the

Defendant's Initials *G. U.*          27

disability was causally related to the accepted work injury. Utley disagreed with the decision and requested an oral hearing with the DOL, Department of Hearings and Review.

From April 7, 2009 to June 19, 2012, Utley was examined by Michael M. Cohen, M.D. Utley reported that he has suffered from no prior significant injuries or accidents. The following medical reports were submitted to DOL:

Defendant's Initials: *G.U.*          28

| 6/19/2012 | Michael M Cohen MD | GSB Building Suite 620, One Belmont Avenue, Bala Cynwyd, PA 19004 | The Patient reports that they have suffered from no prior significant injuries or accidents |
| 2/4/2012 | Michael M Cohen MD | GSB Building Suite 620, One Belmont Avenue, Bala Cynwyd, PA 19004 | The Patient reports that they have suffered from no prior significant injuries or accidents |
| 9/26/2011 | Michael M Cohen MD | GSB Building Suite 620, One Belmont Avenue, Bala Cynwyd, PA 19004 | The Patient reports that they have suffered from no prior significant injuries or accidents |
| 6/27/2011 | Michael M Cohen MD | GSB Building Suite 620, One Belmont Avenue, Bala Cynwyd, PA 19004 | The Patient reports that they have suffered from no prior significant injuries or accidents |
| 3/28/2011 | Michael M Cohen MD | GSB Building Suite 620, One Belmont Avenue, Bala Cynwyd, PA 19004 | The Patient reports that they have suffered from no prior significant injuries or accidents |
| 1/6/2011 | Michael M Cohen MD | GSB Building Suite 620, One Belmont Avenue, Bala Cynwyd, PA 19004 | The Patient reports that they have suffered from no prior significant injuries or accidents |
| 7/27/2010 | Michael M Cohen MD | GSB Building Suite 620, One Belmont Avenue, Bala Cynwyd, PA 19004 | The Patient reports that they have suffered from no prior significant injuries or accidents |
| 7/16/2010 | Robert Draper MD | 1298 Cronson Blvd Suite 203, Crofton Maryland 21114 | The patient had pre-existing degeenrative disk disease, with the activity indicated on the date of the accident, the patient developed a herniated disc that is present on objective MRI |
| 5/3/2010 | Michael M Cohen MD | GSB Building Suite 620, One Belmont Avenue, Bala Cynwyd, PA 19004 | The Patient reports that they have suffered from no prior significant injuries or accidents |
| 2/18/2010 | Michael M Cohen MD | GSB Building Suite 620, One Belmont Avenue, Bala Cynwyd, PA 19004 | The Patient reports that they have suffered from no prior significant injuries or accidents |
| 1/4/2010 | Michael M Cohen MD | GSB Building Suite 620, One Belmont Avenue, Bala Cynwyd, PA 19004 | The Patient reports that they have suffered from no prior significant injuries or accidents |
| 11/4/2009 | Michael M Cohen MD | GSB Building Suite 620, One Belmont Avenue, Bala Cynwyd, PA 19004 | No prior significant injuries or accidents |
| 9/23/2009 | Michael M Cohen MD | GSB Building Suite 620, One Belmont Avenue, Bala Cynwyd, PA 19004 | The Patient reports that they have suffered from no prior significant injuries or accidents |
| 9/3/2009 | Michael M Cohen MD | GSB Building Suite 620, One Belmont Avenue, Bala Cynwyd, PA 19004 | Explaining how its possible that Utley developed the herniated disc L5-S1 after his back strain |
| 8/10/2009 | Michael M Cohen MD | GSB Building Suite 620, One Belmont Avenue, Bala Cynwyd, PA 19004 | The Patient reports that they have suffered from no prior significant injuries or accidents |
| 6/30/2009 | Michael M Cohen MD | GSB Building Suite 620, One Belmont Avenue, Bala Cynwyd, PA 19004 | Disk Herniation at L5-S1, Low Back Pain and right leg pain 8/10, He had difficulty to tie his shoe, numbness and weekness in right leg, NO PRIOR SIGNIFICANT INJURIES OR ACCIDENTS |
| 6/3/2009 | Michael M Cohen MD | GSB Building Suite 620, One Belmont Avenue, Bala Cynwyd, PA 19004 | The Patient reports that they have suffered from no prior significant injuries or accidents |
| 5/4/2009 | Michael M Cohen MD | GSB Building Suite 620, One Belmont Avenue, Bala Cynwyd, PA 19004 | No prior significant injuries or accidents |
| 4/7/2009 | Michael M Cohen MD | GSB Building Suite 620, One Belmont Avenue, Bala Cynwyd, PA 19004 | The Patient reports that they have suffered from no prior significant injuries or accidents |

Defendant's Initials _G.U_                29

On April 18, 2011, Utley was first duly sworn and called as a witness for a deposition with the DOL, Department of Hearings and Review, for the purpose of determining if Utley should receive FECA benefits. As part of that proceeding, Utley was asked the following questions under oath:

Q: *Have you sustained any other injuries since your work injury in 2009?*

A: *Have I sustained any other injuries?*

Q: *Other injuries, intervening injuries to your back?*

A: *To my back? I mean besides its pressing on my nerve and I have other, you know, my doctors say it's causing my high blood pressure. I wasn't taking any medication before this, but they say its's also causing my blood pressure to be high.*

Q: *Have you been involved in any other accidents, automobile accidents?*

A: *No.*

Q: *Or anything like that…*

A: *No.*

Q: *is what I'm asking?*

A: *No, ma'am.*

Q: *Filed any other workers compensation claims?*

A: *No. No, ma'am.*

Defendant's Initials *G. U.*          30

On July 21, 2011, the Hearing Representative for the Department of Labor's Department of Hearings and Review concluded in her decision report, "Based on the hearing testimony, together with the written evidence of record, I find that the decision [denying benefits] should be reversed, and accepted conditions expanded to include an HNP [herniated disc] at L5-S1." This conclusion now permitted Utley to receive benefit payments from DOL-OWCP for his purported back injury.  Thereafter, Utley received both lump sum payments (dating back to his alleged 2009 injury) as well as regular monthly disability benefits payments (from July 2011 forward). The monthly benefit payments ranged from approximately $2,600 (in 2011) to upwards of $3,300 (in 2019).

### Lack of Prescription Pain Medication

A case cost records review revealed that, prior to this being accepted as a compensable injury by DOL-OWCP, Utley was prescribed and received pain medication for his back injury. However, since the July 21, 2011 decision (above), Utley's medical billing records reflect that DOL-OWCP paid only $14 for prescription medicine in 2012. Furthermore, from 2013 to the present, Utley has not required or filled any prescription medications through the DOL-OWCP. Records from the Department of Veterans Affairs show that he has filled no prescription pain medications (other than a June 2020

Defendant's Initials *G. U.*          31

prescription for Ibuprofen) during that same period. This overall lack of prescription pain medication is inconsistent with the painful disabling medical conditions repeatedly asserted by Utley to the DOL-OWCP.

### Prior Insurance Claims/Settlements for Back Injuries

On October 10, 2018, USPS Office of the Inspector General (OIG) Special Agent Mike Walsh (SA Walsh) conducted a search of a National Insurance Services Office database. This database is a repository where insurance companies report automobile accidents as part of an effort to address potentially fraudulent claims in the insurance industry.

According to this database, Utley has been in at least nine automobile accidents, several of which pre-date his alleged January 2009 back injury with the USPS. Utley failed to report these accidents/injuries from prior to April 2011 to the DOL, Department of Hearings and Review (as referenced above); he also failed to report the insurance settlement payments he received from 2012 onward to the DOL-OWCP in his annual EN-1032 form. These specific accidents in the database involving Utley are described below:

-    In 1989, Utley was in an automobile accident where he injured his back. No other records were available for this accident.

-    On October 1, 1996, Utley was in another automobile accident. He retained a law firm and filed a civil suit against State Farm Insurance for an injury to his neck,

Defendant's Initials *C. U.*            32

shoulders, left arm, and back, as well as headaches. Subpoenaed grand jury records revealed that Utley claimed an injury to his mid to lower back with disc narrowing at L5-S1. Doctors for State Farm examined Utley during this civil suit and determined that Utley had a pre-existing "incomplete fusion at L5." "Sacralization" (as this condition is called) is a common irregularity of the spine, where the fifth vertebra is fused to the sacrum bone at the bottom of the spine. The fifth lumbar vertebra, known as L5, may fuse fully or partially on either side of the sacrum, or on both sides. Sacralization is a congenital anomaly that can cause chronic lower back pain. Utley claimed he was not able to work due to this accident.

- On December 20, 2002, Utley was in another automobile accident. He retained a law firm and filed a civil suit against American Insurance Company, for a neck and back injury. No other records were available for this claim.

- On March 6, 2012, Utley was in another automobile accident. He retained a law firm and filed a civil suit against Tokio Marine Specialty/Philadelphia Insurance Company for a lower back injury. On March 14, 2012, Utley received an initial settlement check for $7,156.68. On May 5, 2015, the civil suit settled. Utley received $145,000 (before paying attorney's fees) on May 14, 2015. Subpoenaed bank records showed that Utley later deposited $80,011.84 into his bank account. None of these proceeds were reported by Utley to the DOL-OWCP.

- On July 24, 2015, Utley was in another automobile accident. He retained a law firm and filed a civil suit against GEICO Insurance for injuries to his back and neck. Records revealed that Geico did not pay Utley for his alleged injuries.

## Utley's Unreported Business/Income

Throughout the period that he has been receiving FECA benefit payments, Utley has been operating businesses without disclosing them to the DOL-OWCP. For example, subpoenaed bank records show that on March 28, 2013, Utley drafted and deposited a check for $3,100 from a company, "Elite Rubbish Removal, Inc." Utley endorsed the check as the authorized signatory for the company and then deposited the check into his personal bank account. Even though he was required to do so, Utley never reported these funds to the DOL-OWCP, nor did he report his association with this business.

On April 4, 2013, Utley filed Articles of Incorporation with the Pennsylvania State Division of Corporations for "Elite Rubbish Removal, Inc." The business was registered to Utley's residential address on Pine Street, Glenolden, PA 19036. The Articles of Incorporation were signed by Utley. The company remains active to the present day. Again, Utley never has reported his association with this company to the DOL-OWCP.

An open-source internet search for "eliterubbishremoval.com" revealed that the website was registered and created by George Utley on May 23, 2013. It remained active for one year through a server (schlund.info) in Germany. The administrative contact email for eliterubbishremoval.com was "blackrebel65@XXXXX.com" (redacted). The registered address for the

Defendant's Initials _G. U._          34

company was Utley's on Pine Street in Glenolden, PA 19036. The company

has a phone number of (610) XXX-0909 (redacted), which belongs to Utley's

cellular telephone.

On May 14, 2013, subpoenaed bank records revealed that Utley opened

a new business checking account with TD Bank for "Elite Rubbish Removal,

Inc." The bank account was registered to his residential property in

Pennsylvania. Utley loaned the business money from his personal bank

account and drafted checks for various expenses, including a $4,106.27 check

written to "All Pro Trailer, in Jacksonville FL" on June 6, 2013.[4] In addition,

Utley drafted a check to Verizon wireless for the same cellular phone

number—(610) XXX-0909. This phone number was linked to a yellow-page

telephone book advertisement for "Elite Rubbish Removal, Inc." Again, none

of this employment or business activity was reported to the DOL-OWCP.

As referenced above, the DOL-OWCP sent Utley a required EN-1032

in July 2012 that he subsequently failed to return. As a result, on September

12, 2012, the DOL-OWCP sent Utley a warning letter stating, in pertinent

part:

> Section 10.525(a) of the office's regulations requires
> the claimant to report earnings from any
> remunerative employment, whether full or part
> time. If timely response is not made, the right to

---

[4] Jacksonville is located within the Middle District of Florida.

Defendant's Initials *G.O.*                    35

compensation for wage loss is suspended until the
report is received, at which time compensation will
be restored retroactively.  If the employee omits or
understates earnings, compensation will be declared
forfeit for the period involved.  Moreover, criminal
prosecution may result if deliberate falsehood is
employed in providing answers.

Utley later returned the EN-1032 form, though he failed to report any earnings

from his full or part-time remunerative employment.

### Residency in the MDFL/Proof of Treatment

On June 3, 2015, Utley established residency at Marion Oaks Manor,

Ocala, FL 34473. This location is in Marion County, within the Middle

District of Florida.

Afterward, on July 20, 2015, the DOL-OWCP contacted Utley by

telephone and advised him that had to submit updated medical evidence of his

work-related injury in order to support his assertion of continued disability.

The DOL-OWCP pointed out to Utley that they had not received _any_

supporting medical evidence since 2013.

On July 27, 2015, Utley requested an extension of time to file his

supporting medical evidence because he was "on vacation" from July 20-

August 17, 2015. While on vacation, he asserted that he could not comply

with the DOL-OWCP's request for additional medical documentation.

Defendant's Initials _G.U._                36

A year later, on July 29, 2016, the DOL-OWCP received a written statement, signed by Utley, regarding their July 2015 request for additional supporting medical information for Utley's disability claim. Utley wrote, "Since I have lived in Florida[,] the only doctors I have seen have been VA [Department of Veterans Affairs], an[d] unfortunately for me, they do not fill out this paperwork." He supplied no medical records with this written statement.

Utley's claim of receiving medical treatment for his purported back injury through the Department of Veterans Affairs was false. While Utley did receive medical treatment through the Department of Veterans Affairs, it did not relate to his back injury claim through DOL-OWCP.

### The Philadelphia Housing Authority – Landlord Utley

Certified records from the Philadelphia Housing Authority in Philadelphia, Pennsylvania, revealed that Utley completed a Landlord Owner Certification Training Course on July 31, 2013. From at least April 15, 2015, to March 1, 2017, Utley, under his unique account number, received monthly housing assistance payments of $1,412 for his property on Estaugh Street, Philadelphia, PA 19140. Utley was the landlord for this property. The payments came directly from the Philadelphia Housing Authority.

Defendant's Initials _C. U._                37

Despite the requirements of the annual EN-1032 forms, none of this income or business activity ever was reported by Utley to the DOL-OWCP. Records from the Philadelphia Housing Authority also revealed that Utley had purchased the property for one dollar on May 18, 2009. He has started renting it in 2013—*after* he began receiving his DOL-OWCP benefit payments and the associated EN-1032 reporting forms. Utley also had the following contact information on file with the Philadelphia Housing Authority:

> George W. Utley, Jr.
> XXXXX Bolton Lane (redacted)
> Willingboro NJ, 08046
> Email: blackrebel65@XXXXX.com (redacted)
> Phone number: (215) XXX-8047 (redacted)

Notably, the email address matched the address for Utley's other unreported business, Elite Rubbish Removal (above). Furthermore, on May 23, 2017, Utley filed an Internal Revenue Service Form W-9 in which he listed his residential address on W Blossom Drive, Beverly Hills [Citrus County], FL 34465.

An internet search for Utley's Philadelphia property on Estaugh Street revealed a rental advertisement on the website "www.gosection8.com." On the website, Utley had advertised the property with a rental income of $1,900 per month—none of which ever had been reported to the DOL-OWCP.

Defendant's Initials *G. U.*          38

## Facebook Postings by Utley

Despite Utley's claims of a debilitating, work-related back injury in January 2009, a Facebook search also revealed that Utley could perform activities outside of his stated medical restrictions. For instance, on May 15, 2015, Utley posted a picture of himself sitting on a workout weight bench:



On September 26, 2015, Utley posted a picture of himself wearing riding gear and standing next to a mountain bicycle:

Defendant's Initials _G.U._            39



On September 26, 2016, Utley posted two pictures of himself after an
overnight offshore fishing expedition and later holding a large kingfish
(approximately 3-4 feet long):



On April 20, 2019, Utley posted a picture of himself at the Grand Canyon:

Defendant's Initials _G. U._          40



The Grand Canyon picture had the caption, "All the way to the edge of the Grand Canyon and still meet people from [P]hilly."

### Surveillance by USPS-OIG

In March and April 2019, SA Walsh conducted video-recorded surveillance of Utley's Citrus County residence on West Blossom Drive, Beverly Hills, Florida. The surveillance consisted of two separate 21-day periods. The recordings captured Utley doing yard maintenance for several hours at a time. Utley repeatedly lifted and carried various items. He pushed and pulled these items. He bent at the waist, stooped, squatted, stood, and walked without any assistance. Utley hitched and unhitched a flatbed car carrier and a box trailer from his truck. A records check showed that he had purchased these trailers with funds from his business, Elite Rubbish Removal,

Defendant's Initials _C. U._          41

Inc. Utley also hauled a race car to and from his residence, often crawling underneath the race car and the flatbed trailer.



*Utley with his race car loaded onto a hitched flatbed trailer in April 2019.*

All these activities are inconsistent with the physical limitations that Utley has long claimed in his dealings with the DOL-OWCP. Furthermore, he never has reported any change in his medical condition that would have supported these physical activities in his submitted EN-1032 forms.

### Examination by a DOL-OWCP Physician

On December 4, 2017, Fanourios I. Ferderigos, M.D., examined Utley on behalf of the DOL-OWCP. Dr. Ferderigos performed this examination as a second opinion review of Utley's case. In accordance with the terms of the DOL-OWCP disability program, the purpose of the examination was to assess

Defendant's Initials *G. U.*          42

whether Utley was capable of returning to duty with the USPS in some

capacity (as Utley was receiving benefits under a "return to work" program).

Dr. Ferderigos ultimately opined that Utley could return to work for the USPS

eight hours per day, with restrictions, in a light to medium capacity job.

Based upon these conclusions, on May 8, 2018, the USPS offered Utley

employment within these stated medical restrictions. Utley, however, did not

accept the position. Instead, Utley started vocational rehabilitation training—a

program to learn new job skills through the DOL-OWCP. On April 29,

2019—while in the middle of that training program—Utley told a vocation

rehabilitation specialist that he would "never return to work."

On March 17, 2019, Utley filed an election of benefits form with the

DOL-OWCP. In the form, Utley indicated his desire to switch from the DOL-

OWCP "return to work" disability program to a regular government

retirement provided by the Office of Personal Management (OPM). Unlike the

DOL-OWCP program, the OPM program does not seek to return the injured

person to the workforce. This OPM retirement was earned using credit for

approximately 7 years and 10 months of service during Utley's DOL-OWCP

claim.[5] The OPM program pays, therefore, a slightly lower percentage of the

---

[5] OPM bases its retirement calculation on a government employee's three highest
years of salaried service. Utley's three highest years of service (with a salary of
$56,696) occurred during the period of fraud.

Defendant's Initials *G.U.*          43

person's salary as a monthly benefit and works in conjunction with Social

Security Administration (SSA) disability benefits. Despite the switch in

disability programs, however, Utley continues to receive his medical disability

benefits through DOL-OWCP and will do so for the remainder of his life.[6]

### Sale of Utley's Citrus County Residence

On April 24, 2019, Utley sold his Citrus County residence on West

Blossom Drive, Beverly Hills. The publicly available real estate listing for the

residence included interior photographs. One photograph depicted Utley's

elaborate home gymnasium:



---

[6] As of March 2019, however, he no longer has a reporting requirement to the DOL-OWCP.

Defendant's Initials  *G.U.*          44

Following the sale of his residence, Utley purchased a fifth-wheel recreational vehicle (RV) and travelled to various tourist destinations across the United States. These locations included Key West (Florida), South Dakota, and the Grand Canyon (Arizona). On April 20, 2019, Utley posted a picture on Facebook of his truck and his fifth-wheel recreational vehicle backed into a beach parking area:



The photograph had the caption, "Beast and The Game Changer @ Boyds Key West – Boyds Key West Campground."

### Another Business

Approximately six months after his OPM retirement from the USPS due to his purported back injury, Utley established yet another business— Contemporary Concepts, LLC, in Oklahoma City, OK— on October 16,

Defendant's Initials *C.U.*          45

2019. The business is located on NW 82nd Street, Oklahoma City, OK 73114.
A records search shows the primary contact email for the business as Utley's
email—blackrebel65@XXXXX.com (redacted).  The name of the registered
agent for service of process is "George Utley." The email address registered to
the business is "contemporaryconceptsllc@XXXXX.com" (redacted).  The
registered agent's street address is on 63rd Place, Oklahoma City, OK 23139.

### E-mail Search Warrant

On April 27, 2020, SA Walsh executed a federal search warrant for the
contents of Utley's email account, Blackrebel65@XXXXX.com (redacted,
MDFL Case No. 5:20-mj-1060-PRL). The search warrant encompassed
emails from January 14, 2009 to May 15, 2020. More than 75,000 emails were
reviewed. These emails confirmed that Utley had been engaged in physical
activities and businesses since at least March 28, 2013, and had large sources
of income, none of which had been reported to the DOL-OWCP. Had Utley
complied with his reporting requirements, he would not have received the
disability benefit payments at issue in this case.

For example, Utley's e-mails showed that be began planning his
business, Elite Rubbish Removal, as early as May 10, 2011, while
simultaneously claiming his total disability and an inability to work with the
DOL-OWCP.

## Future business startup cost

 Carollittlejohn <blackrebel65@yahoo.com>
Tc

 5/10/2011

Future business startup cost

Repair & rent 2225 estaugh St
  20,000
Startup for UTL Rubbish & Snow removal business
  25,000
Purchase 2220 estaugh St
  25,000

Later, on August 3, 2012, while receiving disabled payments and reporting to

the DOL-OWCP that he was unable to work, Utley outlined in more detail

the plans for his rubbish removal business:

Defendant's Initials _C.U._          47



UTL

Carollittlejohn <blackrebel65@yahoo.com>

8/3/201?

UTL
Rubbish and Snow
Removal Professionals          Allocate 30,000 start up cost
Requirements :
2008 Toyota Tundra.    21,000
6 x 12 dumpster trailer
(420 cu ft).            3,500
Business license
Business insurance
2 wheeled trash cans        40
1 wheel barrel              50
Snow plow.             3,500
Tailgate salt spreader.    800 snow blower.        1,000
2 shovels                   35


Expansion   allocate 25,00
2008 Ford F-150       10,000
6 x 12(420 cu ft), 7 x 14
(500 cu. ft) dump trailers.
                       8,500
Wheel barrel.            50
Snow plow             3,500
Tailgate spreader.      800
2 snow blowers.       1,000
2801 Bethlehem pike Hatfield pa
5821 n 2nd

A June 24, 2013 e-mail from "1and1.com" revealed invoices paid by

Utley for website hosting services for his business, eliterubbishremoval.com:

Defendant's Initials: *G.U.*          48

| | | | | | |
|---|---|---|---|---|---|
| | | Invoice Date: | | | 06/24/2013 |
| | | Customer ID: | | | 220749122 |
| | | Contract ID : | | | 44399008 |
| | | Invoice No. : | | | 202003999379 |

George Utley
237 Pine St

**Customer Service**
E-Mail: billing@1and1.com
http://www.1and1.com

GLENOLDEN, PA 19036
UNITED STATES

## Invoice Summary (1&1 MyWebsite - Plus Package)

Billing period starting: 06/23/2013

| Item | No. | Service | Charges | Usage | Total |
|---|---|---|---|---|---|
| 1 | 22173 | Basic Fee | $19.99 a month | 3 mo. | $ 59.97 |
| | | 06/23/2013-09/23/2013 s471708381 initial-website.com eliterubbishremoval.com | | | |
| 2 | 22175 | Service Set-up Fee | $0.00 per piece | 1 item | $ 0.00 |
| **Total amount due** | | | | | **$ 59.97** |

The total amount due will be charged to your credit card. Thank you.

In February 2016, Utley received e-mails and invoices from AOC

Maintenance addressed to another one of his businesses—AOC Property

Management on Bolton Lane, Willingboro, NJ 08046. This is the same

address Utley maintained with the Philadelphia Housing Authority. The AOC

Property Management documents listed Utley's contact telephone number

(215) XXX-8047 (redacted). Later in the same year, after Utley had completed

his July 2016 EN-1032, the customer block of the AOC Maintenance invoices

Defendant's Initials *G.U.*                  49

changed from "AOC Property Management" to simply "George Utley." None of this business activity ever was reported by Utley to the DOL-OWCP.

In June 2016, Utley received another e-mail describing a 24-hour overnight fishing trip he had booked. This type of physical activity was completely inconsistent his specified medical condition. After the 24-hour fishing trip, pictures attached to subsequent emails showed a center console boat with multiple passengers, the number of fish caught, and the name of the charter fishing service, as reflected below:

Defendant's Initials *G.U.*                    50

# Fishing trip

 **Gman** <hgardman@tampabay.rr.com>

To     Dennis D;     George U;     Rich Patterson;     Beesley



6/7/2016

ⓘ We removed extra line breaks from this message.

Fishing Trip...Final notice Overnight Fishing Date:  June 14/15. Tuesday June 14 and return sometime afternoon Wednesday June 15. Boat location: Meet at 8:00 a.m  will depart as soon as we get boarded ....Location of departure: McRae's Fish house:  5300 S. Cherokee Way, Homosassa Florida..near the Riverside Tiki hut/restaurant. Bring something to wrap/wear for cool night out.
 Chuck Beesley will bring his 96 qt cooler the community cooler for drinks and wrapped food.

George please be at my house by 7:15 at: 3029 N. Annapolis Ave....if you intend to meet me at McRaes call me.

Call me if need:  352 746 6989 ...cell 443 889 1098

The six guys fishing are:  Dennis Deiasi; Chuck Logann; Chuck Beesley; Ritchie Patterson (coming up from Richmond, Va), George Utley and Herman Gardner

Defendant's Initials _G.U._          51



*Utley holding a large fish (left).*



*Utley standing on the fishing boat (center).*

Defendant's Initials *G. U.*            52

## Loss to DOL-OWCP/USPS

As a result of Utley's fraudulent conduct relating to his DOL-OWCP back injury claim, the United States suffered a loss totaling $732,459.46 between 2009-2019. Utley received these stolen funds as a direct result of his failure to truthfully report his prior accidents/injuries, other sources of income/employment, and the improvement in his specified medical condition. He then converted these government funds to his own use. Had he complied with the mandatory reporting requirements, Utley would not have received these DOL-OWCP benefit payments.